OVERTON,' J.
 

 This suit was brought by plaintiff to recover judgment against defendant for $1,459.55, for the price of a carload of lumber, with legal interest on said amount, less a credit, due defendant on a prior account, amounting to $22.15. Defendant filed an answer, in which it denies that it is indebted to plaintiff in any sum whatever, and for reason, states that plaintiff breached the contract for the delivery of said lumber by not delivering it within the time specified in the epntract, time being of the essence thereof, and that this breach caused the firm
 
 to
 
 which defendant had sold the lumber to cancel its order with defendant, which, in turn, caused defendant to do likewise with plaintiff. Defendant also filed a reeonventional demand, in which it avers that, had plaintiff carried out its contract, it would have made a profit of not less than $900.95, for which it asks for judgment in reconvention against plaintiff, and, as defendant denies all liability to plaintiff, it also reconvenes for the $22.15, above mentioned, for which plaintiff has given defendant credit in its demand against the latter.
 

 The trial court rendered judgment for plaintiff, in accordance with the prayer of plaintiff’s petition, and rejected defendant’s reconventional demand; though it did so reluctantly, because of equities which it found to exist in favor of defendant. The Court of Appeal reversed the judgment rendered by the trial court, and rendered judgment rejecting plaintiff’s demand absolutely, but remanded the case on the reconventional demand, for the purpose of enabling defendant to establish with legal certainty the amount of its ldss. A rehearing was refused,
 
 *257
 
 and the case comes here on a writ of review, issued upon plaintiff’s application.
 

 Briefly stated the facts in the case are as follows: Defendant gave plaintiff an order for a certain quantity and quality of pine lumber, to be delivered f. o. b. at the latter’s mill at Rochelle, La. The order was dated August 2, 1918, and specified that shipment should be made “promptly.” The lumber was intended for use for naval purposes, and was to be of a special cut—a cut not ordinarily called for in commerce. At the time the order was given, this country was at war, and plaintiff was directed to have the bill of lading for the shipment stamped “Urgent. National Necessity. Rush.” Plaintiff was extremely dilatory in getting out the order. So much was this the case that on
 
 October
 
 14, 1918, defendant sent a representative to plaintiff’s mill to urge the immediate loading of the lumber. When defendant’s representative arrived, plaintiff, during the course of conversation with him, pointed out a car on a side track, and told the representative that the car would be loaded the next day. The representative telegraphed defendant accordingly, and defendant, acting upon the faith of plaintiff’s-statement, or, through error, notified its vendee that the car of lumber was shipped on October 15, and wrote plaintiff to do what it could to hasten the movement of the car. Plaintiff, replying to this letter, advised defendant that it was tracing the car, thereby, though probably unwittingly, confirming defendant in the belief that the car of lumber had been shipped, for, as a matter of fact, it, had not been shipped. On November 1, 1918, plaintiff discovered its error, and wrote defendant advising it that the car of lumber had not been shipped. Defendant replied to this letter on November 5, and in doing so, after expressing surprise at the information conveyed, and after expressing its belief that its vendee would be greatly disappointed, and perhaps would demand reimbursement for the delay occasioned it, said:
 

 “You have had the order since August 2d, and at the time it was placed by our Mr. Robinson, promise was made that it would be shipped in 30 days. It is now 90 days, and not a car. has moved, though you wired us on the 14th of October giving us car number, which we communicated to the consignee. There is only one thing that will possibly let us out of this, and that is the immediate shipment of the entire order, and we are going to confidently expect your advice that this has been done within the next few days.”
 

 This letter was received by plaintiff on November 6, 1918, and, on the same day that it was received, plaintiff loaded a car of the lumber ordered, and consigned the shipment in accordance with directions, given some time previously by defendant. On the same day that this lumber was loaded and. shipped, defendant wrote plaintiff that its vendee could wait no longer, and had canceled the entire order, and therefore that it would be forced to do likewise. This letter was received by plaintiff on the day following, which was November 7, and, upon its receipt plaintiff telegraphed defendant that it had shipped a car of the lumber on the day before, and, on November 9, wrote, confirming the 'telegram of November 7, and advising defendant that it was canceling the balance of the order in accordance with its instructions.
 

 The car of lumber shipped, it may be here observed, reached its destination,' but was refused for the reason stated. It may be also observed that plaintiff presented, from time to time, while the contract was in force; excuses for its failure to get the order out promptly, but these we have found unnéeessary to mention. . ' '
 

 Opinion
 

 In Page on Contracts, § 1502, p. 2312, it is said:
 

 “If the promisor hás made default in performance with respect to the time thereof, and
 
 *259
 
 the promisee subsequently permits or urges him to continue performance, or accepts performance thereafter, or accepts payments made in performance, or otherwise treats such contract as still in force,
 
 such breach is waived."
 
 (Italics ours.)
 

 See, also, to the same effect Des Allemands Lumber Co., Limited, v. Morgan City Timber Co., Limited, 117 La. 1, on pages 17 and 18, 41 So. 332; Trumbull v. Sample, 158 La. 629, 104 So. 479.
 

 The record satisfies us that plaintiff, notwithstanding its excuses, was so neglectful of the order, which had been placed with it. and which it had accepted, as to have fully justified defendant in taking steps, prior to November 5, to cancel the order, or, in other words, to terminate the contract, resulting from the acceptance of the order. But up to that time defendant took no steps to put an end to the contract. To the contrary, while fearing the possible result of the delays that had occurred, it was, on that date, still desirous that the lumber be shipped, for, as we have seen, it then wrote plaintiff saying:
 

 “There is only one thing that will possibly let us out of this, and that is the immediate shipment of the entire order, and we are going to confidently expect your advice that this has been done within the next few days.”
 

 When this letter was written, all of the facts were before defendant that would have justified a rescission. This letter does not show an attempt to rescind the contract, but, to the contrary, it shows an intention to insist upon performance. In fact, the letter is a demand for performance, and, reasonably construed, gives defendant at least a few days longer within which to comply with the contract. Therefore, notwithstanding the causes for rescission, which had occurred, defendant elected to insist upon the performance of the contract, and to allow defendant a few days longer within which to perform, and, under the authoritifes above cited, by its election, it waived the breach.
 

 The foregoing was the condition of, or the situation as to, this transaction, when the car of lumber, for the price of which this suit was brought, was shipped. From this situation or condition it appears that, when the shipment was- made, the contract was in force. Plaintiff even had no knowledge then of an attempt to cancel the contract. Plaintiff had every reason to think that it was- then in the act of complying with the contract. It was not until the next day that it received defendant’s letter, written and mailed at New Orleans on the day the shipment was made, attempting to cancel the entire order for the lumber. Nothing had intervened justifying the cancellation of the contract since defendant’s letter had been written insisting on performance. The fact that defendant’s vendee had canceled the order, which it had given defendant, did not justify the latter in canceling its order, given plaintiff, for the reason that the order, given the latter, was not in any manner dependent, under the contract, on the order given defendant by its vendee.
 

 Under the circumstances, we think that plaintiff is entitled to recover the contract price for the lumber shipped. We so think, although plaintiff has not delivered f. o. b., at its mill, as directed in the order, -the entire shipment. But as to this it is obvious that it would have been vain for plaintiff, instead of offering to cancel the remainder of the order, to have attempted to ship the rest of the lumber after the receipt of defendant’s letter, attempting to cancel the entire order, for defendant at that time wanted none of the lumber, and it is manifest thai, had the rest been shipped, it would not have been accepted.
 

 The contract did not contemplate, we may add, that the entire order necessarily should be shipped in one shipment. This appears, we think, not only from the nature or description of the order, but also from the fact
 
 *261
 
 that, when defendant was advised that one car of the lumber had been shipped, it was anxious to receive that car.
 

 As relates to defendant’s reconventional demand for damages for the breach of the contract, our conclusion is that defendant, having waived the breach, is not entitled to recover, plaintiff not having breached the contract after the waiver.
 

 For these reasons the judgment of the Court of Appeal is annulled and set aside, and the judgment of the district court is reinstated, and made the judgment of this court.