## A. L. KORNMAN CO. v. NEWMAN CLOTHIERS et al.
### No. 2220.

Court of Appeal of Louisiana. First Circuit.
March 4, 1941.

Talley & Richardson, of Bogalusa, for appellant.

A. J. Jones, of Bogalusa, for appellee.

DORE, Judge.

Plaintiff seeks to recover the sum of $677 against the defendants Newman Clothiers, a commercial partnership composed of Sam Newman and Philip Newman, and against the said partners individually and in solido.

Plaintiff alleges that on July 27th, 1939, it sold to the defendant partnership certain goods, wares and merchandise to the amount of $689.50, on which there is a credit of $12.50, leaving a balance due of $677. It further alleges that Philip Newman, one of the partners of the said commercial partnership, by letter under date of March 31st, 1939, guaranteed the payment of any merchandise bought by the said partnership firm. It further alleges that the said Philip Newman personally selected, bought and made arrangement for the shipment of the said goods on terms of ten days' net, and that the account has been due since August 7, 1939, and the defendants refuse to pay the same.

The defendants admit that Philip Newman signed the letter of guaranty as alleged but denies all other allegations. In further answer, they allege that Philip Newman, a traveling drug salesman, spends a large part of his time traveling in the interest of his occupation and knows nothing of the clothing business, and is some times absent from Bogalusa, where the business is conducted, for periods of six and eight months; that, during his absence, on May 22, 1939, one Roth, a salesman for the plaintiff, came into defendants' store for the purpose of soliciting orders, but was advised that they were overstocked in summer clothing; that Roth was further advised that Philip Newman had been absent for some two months and lacked knowledge of the condition of the stock on hand, and that it was anticipated that said Philip Newman would visit plaintiff's store in Nashville on his way back to Bogalusa; and that if he should, Roth was to advise him of the condition of the stock; that

Roth assured them that he would deliver the message to Philip Newman, but, instead of so doing, Roth, upon the visit of Philip Newman to the place of business of plaintiff, told Philip Newman that he, Roth, had recently visited defendant's place of business at Bogalusa, and falsely represented that the defendant firm was in need of summer goods; that acting upon this fraudulent and deceitful representation of Roth, Philip Newman purchased a supply of clothes on condition that if the goods were not approved by Sam Newman, the manager of defendants' store, the goods could be returned; that defendant had been accustomed to return clothes to plaintiff when they could not be used, plaintiff accepting the return of the goods; that included in the shipment were goods which had previously been purchased by defendants and returned by them as undesirable; that the shipment of goods was received on August 3, opened and inspected, repacked and forwarded to plaintiff on the following day, August 4, 1939.

On trial, there was judgment in favor of defendants. Plaintiff has appealed.

The case presents purely a question of fact; that is, whether the agreement or contract for the purchase of goods was one of outright sale, or of sale with the privilege of return. The defendants contend that it was an agreement of sale with the privilege of return, and plaintiff contends that it was an unconditional sale. The trial judge found that the agreement was one of sale or return, and that, as the goods were returned immediately after they were received and inspected, there was no liability on the part of the defendants. As this is purely a question of fact, we must find manifest error in the finding of the trial judge if we are to reverse his judgment.

The evidence offered by plaintiff is to the effect that Philip Newman visited its store in Nashville on his way back to Bogalusa, on July 27, 1939, after the summer season was over; that he and Roth visited plaintiff's stockroom, inspected and selected such goods then classified as "Closeouts", at bargain prices, and had the goods segregated; that Newman desired the right to ship these goods to Bogalusa for inspection and approval by Sam Newman, the manager of defendants' store, but this was refused for the reason that "No Returns" were allowed in "Closeout Sales"; that he was informed to make his choice then and there;

that the sale was completed by Newman's acceptance and the shipment of the goods. Roth admitted that he visited defendants' store in Bogalusa on May 22, 1939, but states that such visit was to sell clothes to the defendants for fall delivery; that he has no recollection of any conversation with the defendants or any of their representatives regarding the various items contained in their answer, and positively denies that he was informed that defendants were overstocked in summer goods or that he had been requested to convey any message to that effect to Philip Newman or that he withheld any information from Philip Newman. Roth admits that plaintiff's usual business custom was that their customer had the right to return goods which they could not use, but that such was not the custom on closeout orders which are invoiced "No Returns."

The evidence offered by defendants is to the effect that Roth had visited defendants' store in Bogalusa on May 22, 1939, and was informed that they were overstocked with summer goods; that Philip Newman was on one of his tours, and in the event that Philip Newman would call at plaintiff's establishment on his way back to Bogalusa to inform Philip Newman of the condition of the stock of defendants, and the fact of not being in need of any goods; that Roth had a better knowledge of the stock of merchandise of defendants' store than did Philip Newman. That Philip Newman, on his way back to Bogalusa, having been absent from Bogalusa for some four months or more, and having no knowledge of the condition of the defendants' stock of merchandise, visited the store of plaintiff and met Roth; that Roth not only failed to impart the message that defendants' store was overstocked but informed Philip Newman that he had visited defendants' store in Bogalusa, and that defendants' store was in need of clothes; that Philip Newman purchased the goods with the understanding and condition that they were subject to inspection by Sam Newman, the manager of defendants' store, and, if not satisfactory, with the privilege of returning all or any portion of the goods as was their previous custom; that no exception was made or noted in the purchase of the goods in contest.

It is our observation that in March, 1939, Philip Newman, while in Nashville, had purchased from plaintiff and paid for a certain bill of goods which were shipped to defendants at Bogalusa, and that more than half of these goods were returned to plaintiff, for which credit was given. We note also that the plaintiff accords defendants on the bill sued upon a credit arising out of a previous order. We further note that the goods sued upon were immediately returned to plaintiffs indicating that they were not needed. These facts support the testimony of the defendants to the effect that the return of goods was permitted by custom growing out of previous dealings between the parties. The plaintiff contends that this order was an exception to the general rule permitting the return of goods, but has failed to show by a preponderance of the evidence that such was the fact.

For these reasons, while there is contradiction in the testimony, we cannot find manifest error in the finding of fact of the trial court, and we therefore affirm the judgment.